# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Alaa E. Elkharwily, M.D.,                    Court File No.: _____

                    Plaintiff,

v.                                                    **COMPLAINT**



Mayo Holding Company., a corporation, d/b/a/ Mayo
Health System, d/b/a/ Mayo Clinic Health System
d/b/a Albert Lea Medical Center - Mayo
Health System, Mayo Clinic Health System-
Albert Lea, a corporation, Mayo Clinic, a corporation,
Mark Ciota, M.D., John Grzybowski, M.D.,
Dieter Heinz, M.D., Robert E. Nesse, M.D.,
Steve Underdahl, and Stephen Waldhoff,                    **JURY TRIAL DEMANDED**

                    Defendants.

Plaintiff for his Complaint against Defendants states and alleges as follows:

## PURPOSE OF ACTION

1.    This action is brought to remedy the retaliation visited on Plaintiff by  Defendants

because Plaintiff reported and complained about illegal acts and medical treatment not

conforming to recognized standards of medical care by medical personnel at Mayo Clinic Health

System – Albert Lea, including discharging Plaintiff from his hospitalist position,  cancelling his

research position at Mayo Clinic Rochester, intentionally causing Plaintiff emotional distress,

evicting Plaintiff from his housing, and damaging  his professional and personal reputations.

## JURISDICTION – FEDERAL QUESTION AND SUPPLEMTARY

2.    Plaintiff's action is brought to enforce Plaintiff's rights under 31 U.S.C. § 3730

(h)(2) and 42 U.S.C. § 1395dd over which claims this court has jurisdiction pursuant to 28

U.S.C. §§ 1331. This action is also brought to enforce Plaintiff's rights under Minn. Stat. §

181.932, the Minnesota Whistleblower Act, Minn. Stat. § 626.557,  the Minnesota Reporting of

Maltreatment of Vulnerable Adults Act, and Minnesota common law rights against intentional

infliction of emotional distress, defamation and breach of contract, over which this court has

supplementary jurisdiction pursuant to 28 U.S.C. § 1367.

**JURISDICTION – DIVERSITY OF CITIZENSHIP**

3.      Plaintiff is a citizen of the State of Washington and each Defendant is a citizen of

the State of Minnesota and the amount in controversy herein exceeds $75,000.00 as to each

defendant; therefore this Court also has jurisdiction of this action under 28 U.S.C. ¶ 1332(a)(1).

**PLAINTIFF'S EMPLOYMENT BY DEFENDANT**

4       At all times material, Plaintiff was a medical doctor licensed in the State of

Minnesota.

5.      At all times material, the organizational Defendant's were as follows:

A.      Defendant Mayo Holding Company is a Minnesota corporation, operating

through the assumed names "Mayo Health System," "Mayo Clinic Health System" "Albert Lea

Medical Center - Mayo Health System."

B.      Mayo Clinic Health System-Albert Lea, Inc., is a Minnesota corporation,

C.      Mayo Holding Company., and Mayo Clinic Health System-Albert Lea, Inc,

together or separately operated a hospital now known as Mayo Clinic Health System–Albert Lea

in Albert Lea, Minnesota.  These two Defendants and their hospital are sometimes collectively

referred to herein as "MCHSAL".

D.      Mayo Clinic is a corporation that employed Gregory Warner as Director of

Compliance. Defendant Nesse was on the board of Mayo Clinic. Also upon information and

belief, Defendant Mayo Clinic also exerted direction and control over the operations of

MCHSAL.

2

6.      At times material, the individual Defendants' positions were as follows:

a.   Mark Ciota, M.D. was President or CEO of MCHSAL;

b.   John Grzybowski, M.D.  was Medical Director at MCHSAL;

c.   Dieter Heinz, M.D. was Internal Medicine Department  Chair at MCHSAL;

d.   Robert E. Nesse, M.D., was CEO of Mayo Health System" or "Mayo Clinic Health

     System" and a member of the Board of Trustees and Board of Governors of Mayo Clinic;

e.   Steve Underdahl was Administrator at MCHSAL and was Plaintiff's immediate

     supervisor;

f.   Stephen Waldhoff was CAO at MCHSAL.

7.      From September 7, 2010, through December 10, 2010, Plaintiff was employed by

Defendant as a medical doctor as a hospitalist at MCHSAL pursuant to a contract of

employment.  Plaintiff was also employed as an associate consultant researcher at the Mayo

Clinic, Rochester, in the Department of Gastroenterology and Hepatology, Endoscopic

Ultrasound, Endoscopy, Endoscopy Unit under the mentorship of the Unit Director, Dr. Michael

Levy.

8.      Until December 10, 2010, when he was illegally fired by Defendant MCHSAL,

Plaintiff was compensated with a salary of approximately $195,000, plus hourly wages

calculated at $101.00 per hour, and received fully paid health insurance and retirement benefits,

housing and other benefits and as an Associate Consultant researcher by the Mayo Clinic,

Rochester.

9.      At all times material, Plaintiff performed the duties of his positions in a

professional and exemplary manner.

10.     Plaintiff's contract of employment as a hospitalist included the following terms:

a. Plaintiff could not be discharged without 60 days' notice without cause;

b. Plaintiff could be discharged with cause without 60 days notice;

c. If Plaintiff reported violations of law to Defendant, he would not be retaliated against in any manner;

d. Plaintiff required the permission of the CEO of the MCHSAL, to perform his duties as an Associate Consultant Researcher and/or Research fellow.

**PLAINTIFF'S REPORTS OF DEFENDANT'S ILLEGAL ACTS AND SUBSTANDARD PATIENT CARE THROUGH DECEMBER 8, 2010.**

11.    Between September 7, 2010, and December 8, 2010, Plaintiff observed the following:

A. The Emergency Department and management of MCHSAL exerted extreme pressure on medical staff to admit patients who did not medically require hospitalization to maximize income, including income from Medicare and Medicaid.

B. Medical staff at Defendant MCHSAL routinely admitted patients from the emergency room that did not require admission.

C. On many occasions, medical staff at Defendant MCHSAL routinely transferred patients to Mayo Clinic who, medically, did not require transfer because they were being treated by Defendant's staff or were transferred for no medical reason.

D. Defendant MCHSAL's Emergency staff directed that its medical staff admit patients for the sole reason to meet the three day hospital stay requirement to qualify these patients on paper for nursing home benefit under Medicare and Medicaid rules.

E. Defendant' MCHSAL's ER staff directed that its medical staff admit patients on "social admits." These are patients that could be cared for at home but the Emergency Department would pressure Plaintiff to admit them, misrepresenting that

4

the patients have no one to care for them even though family members who are caregivers accompanied the patients in the hospital.

F.  Defendant MCHSAL's emergency medical staff pressured Plaintiff to admit patients for "comfort care" who are terminally ill and they only required pain medications but not hospitalization, and Plaintiff refused to admit them to the hospital.

G.  Defendant MCHSAL's emergency medical staff  pressured Plaintiff to admit patients who had very minor symptoms, such as a urinary tract infection or a single instance of vomiting, without first attempting simple outpatient medications, which admissions were unnecessary and resulted in false certifications and fraudulent billings to, *inter alia*, Medicare. Plaintiff refused such admission.

H.  On September 15, 2010, there were two instances of negligence, patient safety compromise, admissions from the ER for "observation" with no valid reason.

I.  In mid November 2010, Plaintiff observed and reported to Ramona Anderson, MCHSAL Utilization Department Director, that emergency room doctors at MCHSAL misdiagnosed patients, which resulted in unnecessary or dangerous transfers or no transfers when transfer was indicated, all amounting to substandard care and/or fraudulent billing.

J.  In or about October, 2010, Defendant MCHSAL unnecessarily transferred one of Plaintiff's patients whom he had treated for several days on Plaintiff's first day off to avoid Plaintiff's known refusal to approve unnecessary, fraudulent transfers.

K.  On and about November 10, 2010, the continued pattern of negligence in the ER and by other physicians, pushing admissions for the invalid reasons and endangerment of patient lives and safety.

L.  On November 21, 2010, the chronic problems continued of patient safety compromise, handoff problems and solutions that had been rejected by MCHSAL.

M.  On or about November 25, 2010, Defendant MCHSAL wanted to fraudulently and unnecessarily transfer a stroke patient of Plaintiff.

N.  Physicians at Defendant MCHSAL overbilled for patient contacts, including billings for Medicare and Medicaid.  For example, on weekends doctors would see 20-25 patients in two hours, but bill 15-30 minutes per patient.

O.  Many doctors did not perform physical examinations of patients but documented and billed for physical exams, including billings for Medicare and Medicaid.

P.  Defendant MCHSAL encouraged "comfort care" or "no code" decisions about patients in order to save money on treating them, despite the desire of patients to continue treatment and not die.  In one case a nurse supervisor took a chart away from Plaintiff to prevent him from writing treatment orders for such a patient.

Q.  In October or November 2010, a nurse supervisor allowed a patient to die without calling the on call physician for an hour when the patient suffered hypotension and the nurse should have called immediately.

R.  On December 7, 2010, a patient from the emergency room who had been moved to the ICU had not been admitted by 7:00 a.m. even though he arrived at the emergency room at 2:30 or 3:00 a.m. with extremely high blood pressure and chest and abdominal pain radiating into the back and a history of aneurysms.  No radiological or other tests were ordered and his medical history was not reviewed. The assigned on-call doctor, who was also chair of the hospital "productivity committee," did not come to examine the patient or admit the patient.

S.  On December 7 and 8, 2010, Defendant Grzybowski, Medical Director of Defendant MCHSAL, who was on Defendant's on call list for Family Practice, failed and refused to come to the hospital to treat two patients, both in emergency status. These patients were in near death conditions, of which Defendant Grzybowski was aware, yet he did not come to the hospital despite urging by Plaintiff and by the nurse on duty.

T.  Plaintiff had to stay overnight after his regular shift to care for Defendant Grzybowski's patients, sleeping in a hospital bed near one of them.

U.  On December 8, 2010, when he finally arrived at the hospital, Defendant Grzybowski wanted to transfer one of the patients, whom he had earlier refused to come to the hospital to treat, to the Mayo Clinic in Rochester. This was unnecessary and medically not indicated and Plaintiff refused to approve the transfer since had to first stabilize the patient who was experiencing respiratory failure, and Plaintiff was caring for her already. Defendant Grzybowski was very angry.

V.  On December 8, 2010, Defendant Grzybowski dictated treatment notes for one of the patients whom he had refused to treat earlier, and had to ask the patient for his/her medical history, which history he should have been at the hospital to obtain many hours earlier.

W.  On December 7, 2010, two additional patients on the floor /special care unit received substandard care endangering their lives.

12.    On and prior to December 8, 2010, Plaintiff reported the foregoing observations and facts, to one or more of Defendant MCHSAL's managers Defendant Heinz,  Defendant

Underdahl, Defendant Ciota, Defendant Grzybowski, Monica Fleegel, Director of Human

Resources and Ramona Anderson, Utilization Department at MCHSAL.

**PLAINTIFF'S DISCHARGE AND INTERNAL APPEAL**

13.    On December 8, 2010, Plaintiff was entrusted by Defendants to care for patients

at MCHSAL.

14.    Then, on December 8, 2010, at about 1:30 p.m., Defendant MCHSAL, by

Defendant Underdahl placed Plaintiff on administrative leave because of Plaintiff's reports of the

matters described in Paragraph 11.

15.    On December 8, 2010, Defendant Underdahl stated by in the presence of a

nursing supervisor that "We have been having issues with your practice" as the reason for the

administrative leave.  Defendant Underdahl's statement is false if it implies that Plaintiff failed

to meet a standard of care or behavior.

16.    When pressed by Plaintiff, Defendant Underdahl stated that his concern was that

Plaintiff had ordered an FDA approved medication for a valid medical reason and that Plaintiff

had not responded to a page made to another doctor's pager.

17.    On December 10, 2010, Defendant MCHSAL by Defendant Grzybowski

discharged Plaintiff because of Plaintiff's reports of the matters described in Paragraph 11.

18.    On December 10, 2010, Defendant's Grzybowski and Underdahl pressed Plaintiff

to resign immediately

19.    On December 10, 2010, during the meeting at which he discharged Plaintiff,

Defendants Grzybowski and Underdahl made the following false statements to and concerning

Plaintiff within the presence and hearing of each other and of Monica Fleegel, human resources

director:

8

A. You "can't handle the work load" of his hospitalist position;

B. "It is as difficult to get you to see patients sometimes;"

C. "You resistant to admit from the ER," to which Plaintiff responded that he only resisted fraudulent admissions;

D. "Sometimes you told me you were not comfortable seeing patients;" pl

E. Nurses say you "just disappear" and are hard to find;

F. You "don't participate in the ER;"

G. You are on "90 day probation;"

H. Plaintiff's "performance didn't meet standards," which was also stated in Plaintiff's letter of discharge dated December 10, 2010, from Defendant, signed by Defendant Grzybowski.

20.     Plaintiff told Defendant Grzybowski of the matters related in ¶ 11 herein, including the matters on December 8, 2010, when Defendant Grzybowski refused to come to the hospital.

21.     Defendant Grzybowski refused to provide Plaintiff with any details or witnesses to support his accusations against Plaintiff.

22.     Plaintiff appealed his discharge through several levels of internal review.

23.     On December 11, 2010, Defendant Grzybowski told Plaintiff to resign and that if he did not he would give Plaintiff a bad reference if a potential employer called him.

24.     On December 11, 2010, Plaintiff repeated his reports contained in ¶ 11 herein to Defendant Ciota.

25.     On December 14, 2010, Plaintiff again repeated his reports contained in ¶ 11 to Defendant Ciota.

26.     On December 14, 2010, Plaintiff complained to Defendant Mayo Clinic, Inc.'s compliance director, Gregory Warner, of the matters set forth in ¶ 11 herein.

27.     On December 19, 2010, Defendant MCHSAL locked Plaintiff out of his employer provided housing.

28.     After December 10, 2010, during the pendency of the steps in Plaintiff's appeal of his discharge, Plaintiff reported the following observations to Defendant's management:

A.  On January 4, 2011, Plaintiff reported the information contained in ¶ 11 herein to the Minnesota Board of Medicine, of which report Defendants soon were aware;

B.  On January 4, 2011, Plaintiff reported the information contained in ¶ 11 herein to Dr. Noseworthy, CEO of the Mayo Clinic;

C.  On February 7, 2011, Plaintiff reported the information contained in ¶ 11 herein to Defendant Nesse.

D.  In March 2011, Plaintiff reported the information contained in ¶ 11 herein to Defendant Waldhoff.

29.     On or about April , 2011, Defendant Waldhoff, made the following false statements concerning Plaintiff:

A.  "ALMC staff,  especially members of the Nursing Department, were not able to find you while on-duty and you were not responsive to phone calls and over-head pages; this situation was a consistent complaint from nursing and not a development that was common with other providers."

B.  Emergency Room staff, including Physician colleagues, found you demeanor to be adversarial and you resisted their requests to admit patients needing hospitalization.

C.  Nursing Department members questioned your judgment and interpretations because they believed these lacked consistency (e.g. IV administration of Tylenol; Swallow Study; dictation was contrary to verbal orders given to Nursing; as a result,, there was a lack of trust in your medical decision making by members of the ALC Department of Nursing.

D.  "You demonstrated difficulty with organizing and prioritizing work, and subsequently, some documentation was not timely."

E.  "Some Medical Staff found your interpersonal communication skills to be less than collegial; personal conflicts were present with other members of the Medical Staff."

F.  "Some female members of the Nursing Department found your personal comportment to be inappropriate and disrespectful, and, at times, aggressive and offensive; they cited unwanted invitations to breakfast or dinner and unwanted touching of their anatomy; these interactions violated personal and professional boundaries."

30.     On June 30, 2010, Defendant Grzybowski falsely told a panel reviewing Plaintiff's discharge that he had met with Plaintiff 13 times, along with Defendant Heinz, to talk about problems with Plaintiff's communications.

31.     At no time between Plaintiff's discharge meeting on December 10, 2011, and Defendant's confirmation of Plaintiff's discharge did Defendants provide any specific facts or the names of any witnesses supporting its accusations allegedly causing Plaintiff's discharge.

32.     Defendants manufactured and made up charges against Plaintiff that had no basis in fact.

33.     On July 5, 2011, Plaintiff attempted to report to Defendant Mayo Clinic, Inc.'s compliance director new information that one patient at Albert Lea Medical Center died in May

11

or June 2011 when she was not anticoagulated post-surgery performed by Defendant Ciota and

that on or about March 26, 2011, a patient with pneumonia was misdiagnosed with UTI and no

one including the on-call physician, Defendant Heinz, saw the patient for 24-36 hours, however,

on July 6, 2011, Mr. Warner rejected his attempt and referred him to Defendant Nesse.

34.    On July 7, 2011, Plaintiff did report to the Defendant Nesse, the information

described in ¶ 33 above.

35.    On July 8, 2010, Defendant MCHSAL confirmed Plaintiff's discharge.

## COUNT I

### VIOLATION OF FALSE CLAIMS ACT, 31 U.S.C. § 3730 -  DEFENDANTS MCHSAL, MAYO CLINIC, MARK CIOTA, M.D., JOHN GRZYBOWSKI, M.D., DIETER HEINZ, M.D., ROBERT E. NESSE, M.D., STEVE UNDERDAHL AND STEPHEN WALDHOFF

36.    Plaintiff re-alleges the forgoing paragraphs in this Complaint.

37.    Plaintiff's actions in resisting fraudulent and unnecessary hospital admissions and

transfers of patients and fraudulent billings by Defendant MCHSAL and Plaintiff's reports and

complaints about same, as described in ¶ 11 and 19.c., 20, 24, 25, 26, 28, 33 and 34 herein,

constituted efforts by Plaintiff to stop one or more violations of 31 U.S.C. § 3729, including but

not by way of limitation, presenting false claims to the United States for payment, and using

false records material to a false or fraudulent claim for payment to the United States.

38.    Plaintiff's resistance to said illegal acts and his reporting of same described in the

foregoing paragraph was protected under 31 U.S.C. § 3730 (h)(1).

39.    Defendants Mayo Clinic, Ciota, Grzybowski, Heinz, Nesse, Underdahl and

Waldhoff caused Defendant MCHSAL to discharge Plaintiff and affirm Plaintiff's discharge

because of Plaintiff's engaging in actions protected under 31 U.S.C. § 3730 (h)(1).

40.     Defendant MCHSAL discharged and affirmed Plaintiff's discharge because of Plaintiff's engaging in actions protected under 31 U.S.C. § 3730 (h)(1).

41.     As a result of Defendants' violation of 31 U.S.C. § 3730 (h)(1), Plaintiff has lost his physician's job with Defendant, has lost his research consulting job at the Mayo Clinic, has lost important practice and research experience, has lost past wages and benefits and future earning capacity, has lost has suffered and continues to suffer, severe emotional distress, humiliation, embarrassment and loss of enjoyment of life, and has and will incur attorney fees, for all of which Defendants are liable to Plaintiff.

42.     Defendants are additionally liable to Plaintiff for two times lost back pay pursuant to 31 U.S.C. § 3730 (h)(2).

## COUNT II

**VIOLATION OF EMTALA – 42 U.S.C. § 1395dd - DEFENDANTS MCHSAL, MAYO CLINIC, MARK CIOTA, M.D., JOHN GRZYBOWSKI, M.D., DIETER HEINZ, M.D., ROBERT E. NESSE, M.D., STEVE UNDERDAHL AND STEPHEN WALDHOFF, M.D.**

43.     Plaintiff re-alleges the foregoing paragraphs of this Complaint.

44.     Defendants are subject to the terms of 42 U.S.C. § 1395dd.

45.     Defendants Mayo Clinic, Ciota, Grzybowski, Heinz, Nesse, Underdahl and Waldhoff caused Defendant MCHSAL to discharge Plaintiff and to affirm the discharge because Plaintiff refused to authorize the transfer of the patient described in ¶ 11.U, who had an emergency medical condition and who had not been stabilized and because Plaintiff reported a violation of a requirement of this section, contrary to 42 U.S.C. § 1395dd (i).

46.     Defendant MCHSAL discharged Plaintiff on December 10, 2010, because Plaintiff refused to authorize the transfer of the patient described in ¶ 11.U, who had an

emergency medical condition and who had not been stabilized and because Plaintiff reported a violation of a requirement of this section, contrary to 42 U.S.C. § 1395dd (i).

47.     As a result of Defendants' violation of 42 U.S.C. § 1395dd(i), Plaintiff has lost his physician's job with Defendant, has lost his research consulting job at the Mayo Clinic, has lost important practice and research experience, has lost past wages and benefits and future earning capacity, has lost has suffered and continues to suffer, severe emotional distress, humiliation, embarrassment and loss of enjoyment of life, and has and will incur attorney fees, for all of which Defendants are liable to Plaintiff.

## COUNT III

### VIOLATION OF MINN. STAT. ¶ 181.932 - DEFENDANT MCHSAL

48.     Plaintiff re-alleges the foregoing paragraphs of this Complaint.

49.     Minn. Stat. 181.932, Subd. 1, provides in pertinent part as follows:

> An employer shall not discharge, discipline, threaten, otherwise discriminate against, or penalize an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because:
>
> (1) the employee, or a person acting on behalf of an employee, in good faith, reports a violation or suspected violation of any federal or state law or rule adopted pursuant to law to an employer or to any governmental body or law enforcement official;
>
> * * *
>
> (3) the employee refuses an employer's order to perform an action that the employee has an objective basis in fact to believe violates any state or federal law or rule or regulation adopted pursuant to law, and the employee informs the employer that the order is being refused for that reason;
>
> 4) the employee, in good faith, reports a situation in which the quality of health care services provided by a health care facility, organization, or health care provider violates a standard established by federal or state law or a professionally recognized national clinical or ethical standard and potentially places the public at risk of harm;

50.     Pursuant to Minn. Stat. §181.935, Plaintiff may sue his employer, Defendant MCHSAL, for relief from its violation of Plaintiff's rights under Minn. Stat. §181.932.

51.     Between September 7, 2010, and July 7, 2011, Plaintiff in good faith, reported violation or suspected violation of the following federal and state law or rule adopted pursuant to law to Defendant MCHSAL, to wit:

A.  Violation of EMTALA, 42 U.S.C. § 1395dd et seq;

B.  Violation of False Claims Act, 31 U.S.C. § 3729 and § 3730;

C.  Violation of Minnesota Vulnerable Adult Act, Minn. Stat. § 626.557;

D.  Violation of Minn. Stat. § 609.233.

52.     On January 4, 2011, Plaintiff in good faith, reported a violation or suspected violation of federal or state law or rule adopted pursuant to law to the State of Minnesota Board of Medical Practices, a government agency, to wit:

A.  Violation of EMTALA, 42 U.S.C. § 1395dd et seq;

B.  Violation of False Claims Act, 31 U.S.C. § 3729 and § 3730;

C.  Violation of Minnesota Vulnerable Adult Act, Minn. Stat. § 626.557;

D.  Violation of Minn. Stat. § 609.233.

53.     Between September 7, 2010, and July 7, 2011, Plaintiff in good faith, reported to the State of Minnesota Board of Medical Practices, a government agency, and to Defendant MCHSAL situations in which the quality of health care services provided by Defendant's hospital and medical staff providers violated a standard established by federal or state law or a professionally recognized national clinical or ethical standard and potentially places the public at risk of harm.

54.     On January 4, 2010, Plaintiff in good faith, reported to the State of Minnesota

Board of Medical Practices, situations in which the quality of health care services provided by Defendant's hospital and medical staff providers violated a standard established by federal or state law or a professionally recognized national clinical or ethical standard and potentially places the public at risk of harm.

55.     Plaintiff refused Defendant's order to perform an action that Plaintiff had an objective basis in fact to believe violates any state or federal law or rule or regulation adopted pursuant to law, and the Plaintiff informed the Defendant MCHSAL that the order was being refused for that reason, to wit: on December 10, 2010, Plaintiff told Defendant's management that he resisted admitting patients where the basis claimed by Defendant or other staff members was fraudulent.

56.     Defendant discharged Plaintiff because of Plaintiff's said reports and refusal to make fraudulent admissions, in violation of Minn. Stat. § 181.932, Subd. 1.

57.     As a result of Defendant's violation of Minn. Stat. § 181.932, Subd. 1., Plaintiff has lost his physician's job with Defendant, has lost his research consulting job at the Mayo Clinic, has lost important practice and research experience, has lost past wages and benefits and future earning capacity, has lost has suffered and continues to suffer, severe emotional distress, humiliation, embarrassment and loss of enjoyment of life, and has and will incur attorney fees, for all of which Defendants are liable to Plaintiff.

## COUNT IV

**VIOLATION OF MINNESOTA REPORTING  MALTREATMENT OF VULNERABLE ADULTS ACT - DEFENDANTS MCHSAL, MAYO CLINIC, MARK CIOTA, M.D., JOHN GRZYBOWSKI, M.D., DIETER HEINZ, M.D., ROBERT E. NESSE, M.D., STEVE UNDERDAHL AND STEPHEN WALDHOFF,**

58.     Plaintiff re-alleges the foregoing paragraphs of this Complaint.

59.     Many of the observations and matters that Plaintiff reported or complained about, described in Paragraphs 11, 19, 20, 24, 25, 26, 28, 33 and 34 herein involved mistreatment of vulnerable adults as defined in the Minnesota Vulnerable Adult Protections Act, Minn. Stat. § 626.557.

60.     Defendants Mayo Clinic, Ciota, Grzybowski, Heinz, Nesse, Underdahl and Waldhoff caused Defendant MCHSAL to discharge Plaintiff and to reconfirm the discharge because of and within 90 days of his reports of maltreatment of vulnerable adults, contrary to Minn. Stat, § 626.557, Subd. 17, and Plaintiff's discharge and the affirmance of his discharge are therefore presumed to be retaliatory in violation of said statute.

61.     Defendant MCHSAL discharged Plaintiff because of and within 90 days of his reports of maltreatment of vulnerable adults, contrary to Minn. Stat, § 626.557, Subd. 17, and Plaintiff's discharge is therefore presumed to be retaliatory in violation of said statute.

62.     As a result of Defendants' violation of Minn. Stat. § 181.932, Subd. 1., Plaintiff has lost his physician's job with MCHSAL, has lost his research consulting job at the Mayo Clinic, has lost important practice and research experience, has lost past wages and benefits and future earning capacity, has lost has suffered and continues to suffer, severe emotional distress, humiliation, embarrassment and loss of enjoyment of life, and has and will incur attorney fees, for all of which Defendants are liable to Plaintiff

63.     Defendants are also liable to Plaintiff on this Count III for punitive damages in an amount up to $10,000 in addition to all other remedies available to him under this Complaint.

## COUNT V

### BREACH OF CONTRACT - DEFENDANT MCHSAL

64.     Plaintiff re-alleges the foregoing paragraphs of this Complaint.

65.     Defendant MCHSAL's discharge of Plaintiff was contrary to and in breach of the term of Plaintiff's contract providing that if Plaintiff reported violations of law to Defendant, he would not be retaliated against in any manner

66.     Plaintiff also worked numerous hours in excess of the number required by his contract of employment, and was entitled to additional compensation, but Defendant has failed and refused to pay same.

67.     The exact amount of unpaid compensation due to Plaintiff is not known and Plaintiff is entitled to an accounting of his hours worked and amounts paid and amounts remaining unpaid.

68.     As a result of Defendant's breach of contract, Defendant owes Plaintiff back wages and benefits and prospective wages and benefits.

## COUNT VI

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS – DEFENDANT MCHSAL

69.     Plaintiff re-alleges the foregoing paragraphs of this Complaint.

70.     In this Count, Defendant MCHSAL acted through its agents and employees acting within the course and scope of their employment, including at least the following persons: Mark Ciota, M.D., John Grzybowski, M.D., Robert E. Nesse, M.D., Steve Underdahl, and Stephen Waldhoff.

71.     At all times material Defendant through its employees and agents acting within the course and scope of their employment knew and believed that Plaintiff suffered from bipolar disorder and that placing Plaintiff in a stressful situation in that Plaintiff perceived was hopeless and in which Plaintiff was helpless would cause intense mental distress.

72.     At all times material Defendant knew through its agents and employees acting within the course and scope of their employment that Plaintiff had devoted years of time and effort to earning the right to practice medicine in the United States and to obtaining positions at the prestigious Mayo Clinic system of health care institutions.

73.     Between December 8, 2010, and July 8, 2011, Defendant through its agents and employees acting within the course and scope of their employment engaged in a pattern of extreme and outrageous conduct toward Plaintiff, which conduct was intentional or reckless, and which conduct had the purpose and effect of causing Plaintiff severe emotional distress.

74.     Said pattern of behavior involved:

A.  threatening to discharge Plaintiff and ruin his career and life if he did not resign;

B.  making false accusations that Plaintiff's professional performance was substandard in multiple aspects;

C.  summarily evicting Plaintiff from his housing;

D.  making ever changing allegations supporting Plaintiff's discharge;

E.  never providing specifics of incidents or the identity of witnesses to Plaintiff's alleged behavior;

F.  promising to investigate Plaintiff's complaints and reports of violations of law, substandard patient care and compromises of patient safety at MCHSAL's hospital, but never doing so;

G.  instead, escalating as Plaintiff reported additional incidents of violations of law and substandard medical care at Albert Lea Medical Center.

H.  making false accusations that Plaintiff had engaged in sexually inappropriate behavior with female staff;

I.   misrepresenting to the "ad hoc committee" reviewing Plaintiff's discharge that 13 meetings had been held with Plaintiff before his discharge to correct alleged deficiencies in Plaintiff's performance.

75.   As a result of Defendants' behavior, Plaintiff was caused severe, continuous and excessive emotional distress, nightmares, adjustment disorder, and attempted suicide, requiring hospitalization and continuous therapy, all to Plaintiff's pecuniary damage for which he is entitled to compensation from Defendant.

## COUNT VII

## DEFAMATION – DEFENDANTS MCHSAL, GRZYBOWSKI, UNDERDAHL, AND WALDHOFF

76.   Plaintiff re-alleges the foregoing paragraphs of this Complaint.

77.   The statements hereinabove alleged to have been made by Defendant MCHSAL'S officers and agents, Defendants Grzybowski, Underdahl and Waldhoff, concerning Plaintiff were false, were communicated to one or more persons other than Plaintiff, and tended to harm Plaintiff's professional and personal reputation and to lower Plaintiff in the estimation of the community.

78.   Plaintiff has been foreseeably compelled, and will foreseeably be compelled in the future, to self-republish Defendants' defamatory statements to potential employers and medical profession regulators.

79.   Defendants' defamatory statements were made without privilege.

80.   Defendants made and published the aforesaid defamatory statements maliciously with knowledge or reckless disregard of their falsity.

81.   Defendants' defamatory statements were made with ill-will and improper motive or wishing wantonly and without cause to injure the plaintiff.

20

82.     Defendants Grzybowski, Underdahl and Waldhoff made their defamatory statements in the course and scope of their employment by MCHSAL, which is thus liable for them.

83.     Defendants' defamatory statements concerning Plaintiff affected Plaintiff in his business, trade, profession, office, or calling and are defamatory per se and are actionable even without proof of actual damages and give rise to a presumption of general damages for harm to Plaintiff's reputation.

84.     As a result of Defendants' publication of said false, defamatory statements concerning Plaintiff as described above, Plaintiff has suffered actual and general injury to his reputation, mental suffering, and alienation of his associates, all to Plaintiff's pecuniary damage.

## COUNT VIII

### PUNITIVE DAMAGES – FEDERAL CLAIMS

85.     Plaintiff re-alleges the foregoing paragraphs of this Complaint.

86.     Defendants' wrongful acts in violation of Plaintiff's federally protected rights hereinabove alleged were committed by them with malice and reckless indifference to Plaintiff's federally protected rights and Defendants had knowledge that they may have been acting in violation of federal law.

87.     Plaintiff is entitled to punitive damages on his federal claims herein.

WHEREFORE, Plaintiff demands judgment against Defendant:

1.  Reinstating Plaintiff to his position at Defendants MCHSAL AND Mayo Clinic;

2.  Ordering an accounting from Defendant MCHSAL of compensation due to Plaintiff;

3. For an amount of money as will fully and fairly compensate Plaintiff for his damages herein, together with interest, costs and disbursements and attorney's fees allowed by law.

4. For such other and further relief as the Court deems just.

Dated: December 6, 2012.

_____

Richard T. Wylie, ID No. 11912X
222 South Ninth Street
Suite 1600
Minneapolis, MN 55402
612-337-9581
**ATTORNEY FOR PLAINTIFF**