UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 12-3062(DSD/JJK)

Alaa E. Elkharwily, M.D.,

      Plaintiff,

v.                                          **ORDER**

Mayo Holding Company, a corporation,
d/b/a Mayo Health System, d/b/a
Mayo Clinic Health System, d/b/a
Albert Lea Medical Center - Mayo
Health System, Mayo Clinic Health
System - Albert Lea, a corporation,
Mayo Foundation, Mark Ciota, M.D.,
John Grzybowski, M.D., Dieter
Heinz, M.D., Robert E. Nesse, M.D.,
Steve Underdahl, and Stephen Waldhoff,

      Defendants.

      Richard T. Wylie, Esq., 222 South Ninth Street, Suite
1600, Minneapolis, MN 55402, counsel for plaintiff.

      David T. Schultz, Esq., Charles G. Frohman, Esq. and
Maslon, Edelman, Borman & Brand, LLP, 90 South Seventh
Street, Suite 3300, Minneapolis, MN 55402, counsel for
defendants.

      This matter is before the court upon the motion to amend by

plaintiff and the motion to dismiss by defendants.[1]  Based on a

review of the file, record and proceedings herein, and for the

following reasons, both motions are granted in part.

---

[1] Defendants include the Mayo Holding Company; Mayo Clinic
Health System - Albert Lea; Mayo Foundation; Mayo Clinic, Inc.;
Mark Ciota; John Grzybowski; Dieter Heinz; Robert E. Nesse; Steve
Underdahl; and Stephen Waldhoff.

**BACKGROUND**

This employment dispute arises out of the termination of plaintiff Alaa E. Elkharwily by defendant Mayo Clinic Health System-Albert Lea (MCHSAL). Elkharwily held a hospitalist position at MCHSAL from September 7, 2010, through December 10, 2010. Second Am. Compl. ¶ 7. Elkharwily's employment was governed by an employment contract that contemplated sixty days' notice for termination without cause or sixty days' pay in lieu of notice. Id. ¶ 10.

While employed by MCHSAL, Elkharwily alleges that he observed instances of compromised patient safety and fraudulent billing. Id. ¶ 11. Elkharwily reported these violations to MCHSAL human resources personnel, the Utilization Department and various supervisors. Id. ¶ 15. Specifically, Elkharwily reported, among other things, negligence and unnecessary emergency room admissions, patient misdiagnosis resulting in substandard care and fraudulent billing, unnecessary admittance of a terminally-ill patient for "comfort care," improper coding of wound care, inaccurate billing, alterations in the cause of admission and the failure to follow hand-off procedures. Id. ¶¶ 11, 12, 15.

On December 7, 2010, two emergency room patients were in "near death conditions," and Elkharwily requested that defendant John Grzybowski, the "on call" physician and Medical Director of MCHSAL, report to the hospital. Id. ¶ 11(U). Grzybowski did not respond

2

to Elkharwily's call and failed to report to the hospital until the following day. Id. ¶ 11(U)-(W). On December 8, 2010, Elkharwily reported Grzybowski's failure to respond to defendant Steve Underdahl, an MCHSAL administrator. Id. ¶ 11(U).

When Grzybowski arrived at the hospital, he attempted to transfer one of Elkharwily's patients to the Mayo Clinic in Rochester, Minnesota. Id. ¶ 11(W). Elkharwily alleges that he resisted the transfer, as the patient was experiencing respiratory failure and first needed to be stabilized. Id. In his January 3, 2011, report to the Minnesota Board of Medical Practice, however, Elkharwily stated that he "refused the transfer because [he] was taking care of the patient already and she was already stabilized and feeling better." Civello Decl. Ex. 4, at B-2.[2]

Later that day, Underdahl informed Elkharwily that he was being placed on administrative leave. Second Am. Compl. ¶¶ 18-20. On December 10, 2010, Grzybowski and Underdahl requested that

---

[2] Although the report is not attached to the second amended complaint, Elkharwily pleads that he filed a report with the Minnesota Board of Medicine. See Second Am. Compl. ¶ 39(A). As a result, the report is necessarily embraced by the second amended complaint and is properly considered at the motion-to-dismiss stage. See Nat'l Broom Co. of Cal. v. Target Corp., No. 12-1201, 2012 WL 4856295, at *1 n.1 (D. Minn. Oct. 12, 2012) ("The Court may properly consider [nonparty] testing reports because they are referred to throughout the Complaint ... and are therefore incorporated into the complaint by reference." (citation and internal quotation marks omitted)); Thunander v. Uponor, Inc., 887 F. Supp. 2d 850, 859 n.1 (D. Minn. 2012) ("Because the Complaint also references Defendants' express warranties ... the Court will consider the warranty exhibits submitted by the parties.").

Elkharwily resign.  Id. ¶ 24.  Elkharwily refused and was terminated, effective immediately.  Id. ¶ 26.  Following the termination, Elkharwily reported his observations regarding compromised patient safety and violations of federal and state law to numerous Mayo Clinic officials and the Minnesota Board of Medicine.  Id. ¶ 39.  Elkharwily also filed an administrative appeal.  On July 8, 2011, MCHSAL confirmed the termination decision.  Id. ¶ 46.

On December 6, 2012, Elkharwily filed suit, alleging violations of the False Claims Act (FCA), Emergency Medical Treatment and Active Labor Act (EMTALA), Minnesota Whistleblower Act (MWA), Minnesota Vulnerable Adults Act (MVAA), breach of contract, intentional infliction of emotional distress (IIED) and defamation.  On December 20, 2012, defendants filed a motion to dismiss.  Thereafter, on February 1, 2013, Elkharwily filed a motion to amend the complaint.  The court held oral argument on February 22, 2013, where it granted the motion to amend and took the motion to dismiss under advisement.  See ECF Nos. 29-30. Thereafter, on March 27, 2013, Elkharwily filed a second motion to amend.

## DISCUSSION

### I.   Leave to Amend

The court shall provide leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend, however, is not an absolute right and "undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment may be grounds to deny a motion to amend." Doe v. Cassel, 403 F.3d 986, 991 (8th Cir. 2005) (citation and internal quotation marks omitted).

Elkharwily first seeks leave to amend in order to correct several internal cross-references in the first amended complaint. Defendants do not object, and the motion to file a second amended complaint is granted.

Elkharwily next seeks "leave to further amend as to any claim on which the Court might find that [the] pleadings fall short." Pl.'s Mem. Supp. Am. 2. In other words, Elkharwily asks for conditional permission to file a third motion to amend. Setting aside ripeness concerns, it is not the role of the court to draft Elkharwily's complaint by telling him what facts are sufficient to survive a motion to dismiss. Moreover, such a request does not comply with District of Minnesota Local Rules regarding amendment. See D. Minn. LR 15.1 (requiring a "copy of the proposed amended pleading"); see also In re 2007 Novastar Fin. Inc., Sec. Litig.,

579 F.3d 878, 884-85 (8th Cir. 2009) ("[I]n order to preserve the right to amend the complaint, a party must submit the proposed amendment along with its motion." (alteration in original) (citation and internal quotation marks omitted)). Therefore, to the extent that Elkharwily seeks conditional permission to file a third amended complaint, the motion is denied.

## II.  Motion to Dismiss

To survive a motion to dismiss for failure to state a claim, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Although a complaint need not contain detailed factual allegations, it must raise a right to relief above the speculative level. See Twombly, 550 U.S. at 555. "[L]abels and conclusions or a formulaic recitation of the elements of a cause of action" are not sufficient to state a claim. Iqbal, 556 U.S. at 678 (citation and internal quotation marks omitted).

A.    **False Claims Act**

Elkharwily first alleges retaliatory discharge in violation of the FCA.  The FCA protects a whistleblower who is "discharged ... because of lawful acts done ... in furtherance of [a civil action for false claims]." 31 U.S.C. § 3730(h).  An FCA-retaliation claim has four elements: "(1) the plaintiff was engaged in conduct protected by the FCA; (2) the plaintiff's employer knew that the plaintiff engaged in the protected activity; (3) the employer retaliated against the plaintiff; and (4) the retaliation was motivated solely by the plaintiff's protected activity." Schuhardt v. Wash. Univ., 390 F.3d 563, 566 (8th Cir. 2004) (citation omitted).  An FCA-retaliation claim does not require a showing of fraud and, as a result, need not be pleaded with specificity under Rule 9(b).  See Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1103 (9th Cir. 2008); U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 238 n.23 (1st Cir. 2004), abrogation on other grounds recognized by U.S. ex rel. Gagne v. City of Worcester, 565 F.3d 40 (1st Cir. 2009).

MCHSAL argues that Elkharwily has alleged neither protected conduct nor that the retaliation was motivated solely by the protected activity.  The court addresses each argument.

1.    **Protected Activity**

To establish protected activity, Elkharwily must show that (1) his conduct was in furtherance of an FCA action and (2) the

conduct was aimed at matters that are calculated, or reasonably could lead, to a viable FCA action. Schuhardt, 390 F.3d at 567. At the time of the retaliatory action, the whistleblower need not "have filed an FCA lawsuit or ... have developed a winning claim," but he must have done more than merely report wrongdoing to supervisors. Id. (citations omitted). Indeed, in examining whether the whistleblower has acted "in furtherance" of an FCA claim, the court examines whether the whistleblower undertook activity outside of his "job duties." Id.

Here, Elkharwily alleges conduct in violation of Medicare and Medicaid, including unnecessary emergency room and hospital admissions, improper wound-care coding and the overbilling of patient contact time. See Second Am. Compl. ¶¶ 11-12. Such violations create viable causes of action under the FCA. See U.S. ex rel. Quirk v. Madonna Towers, Inc., 278 F.3d 765, 768 (8th Cir. 2002) (noting that fraudulent Medicare billing can establish claim under FCA). Moreover, Elkharwily alleges that he reported these violations to numerous MCHSAL supervisors and "took notes of his observations, including case details" for numerous patients treated by other physicians. Id. ¶ 13; see id. ¶¶ 11(N), 15. Accepting these allegation as true, Elkharwily has alleged facts sufficient to demonstrate that he participated in activity outside of his job description and in furtherance of a qui tam action. See Schuhardt, 390 F.3d at 567-68 (finding similar activity - including complaint

to supervisor regarding billing practices and the photocopying of files - to constitute protected activity). As a result, Elkharwily has stated a plausible claim that he engaged in protected activity.

### 2. Causation

MCHSAL next argues that Elkharwily has not pleaded facts sufficient to establish causation. Specifically, MCHSAL argues that Elkharwily has not alleged that his termination was solely because of protected activity, and, as a result, any finding of dual motive exonerates MCHSAL. See Norbeck v. Basin Elec. Power Coop., 215 F.3d 848, 851 (8th Cir. 2000) (holding that defendant was entitled to jury instruction regarding dual-motive affirmative defense). MCHSAL explains that Elkharwily pleaded claims under EMTALA, the MWA and the MVAA and that this alone establishes that he was not terminated solely for his protected activity under the FCA.

The court finds MCHSAL's argument unpersuasive. Indeed, under MCHSAL's interpretation, a plaintiff would be unable to plead alternative bases for relief when bringing FCA actions, in contravention of Federal Rule of Civil Procedure 8(d)(2). Moreover, although Norbeck explained that the jury should be given a dual-motive affirmative defense instruction, at the motion-to-dismiss stage, a plaintiff need only plead facts that would allow the court to conclude that he was terminated for engaging in protected activity. As Norbeck explains:

> [T]he whistleblower must show the employer had
> knowledge the employee engaged in "protected
> activity" and [that] the retaliation was
> motivated, at least in part, by the employee's
> engaging in protected activity.  Once these
> elements have been satisfied, the burden of
> proof shifts to the employer to prove
> affirmatively that the same decision would
> have been made even if the employee had not
> engaged in protected activity.

Norbeck, 215 F.3d at 850-51 (quoting S. Rep. 99-345, at 35).  In other words, the "solely" analysis is an affirmative defense and does not impact the court's motion-to-dismiss analysis.  Id. (characterizing inquiry as "a dual motive affirmative defense").

Here, as already explained, Elkharwily alleged facts sufficient to show he engaged in protected activity and that he was terminated shortly thereafter.  See Second Am. Compl. ¶ 15 (reporting numerous alleged violations in week prior to discharge).  As a result, Elkharwily has pleaded facts sufficient to allege causation, and dismissal of the FCA claim against MCHSAL is not warranted.

### 3.   Additional Defendants

Elkharwily also alleges FCA retaliation against defendants Mayo Clinic, Inc. and Mayo Foundation (collectively, Institutional Defendants).  Specifically, Elkharwily claims that these defendants "caused Defendant MCHSAL to discharge [Elkharwily] and later affirm [Elkharwily's] discharge."  Id. ¶ 52.  Such a vague allegation fails to state a claim under Twombly and Iqbal, and dismissal is warranted as to these defendants.

10

Elkharwily next alleges FCA retaliation against numerous individual defendants. Even if pleaded with specificity, the claim would fail, as the FCA does not allow retaliatory discharge actions against individual defendants. See Aryai v. Forfeiture Support Assoc., LLC, No. 10 Civ. 8952, 2012 U.S. Dist. LEXIS 125227, at *19-27 (S.D.N.Y. Aug. 27, 2012) (discussing the change in statutory language and finding that when Congress deleted "employer" from the statute it did not mean to add individual liability for a violation of the retaliation provision). But see U.S. ex rel. Moore v. Cmty. Health Servs., Inc., No. 3:09cv1127, 2012 WL 1069474, at *9 (D. Conn. Mar. 29, 2012) (concluding - in one sentence analysis - that omission of the word "employer" created individual liability). Therefore, the FCA retaliation claim fails as to these defendants, and dismissal is warranted.

### B.    Emergency Treatment and Active Labor Act

Elkharwily next alleges termination in violation of EMTALA. In relevant part, EMTALA explains:

> A participating hospital may not penalize or take adverse action against ... a physician because the ... physician refuses to authorize the transfer of an individual with an emergency medical condition that has not been stabilized or against any hospital employee because the employee reports a violation of a requirement of this section.

42 U.S.C. § 1395dd(i). Courts examine EMTALA-retaliation claims under Title VII jurisprudence. See Ritten v. Lapeer Reg'l Med. Ctr., 611 F. Supp. 2d 696, 715-16 (E.D. Mich. 2009); Lopes v.

Kapiolani Med. Ctr. for Women & Children, 410 F. Supp. 2d 939, 947 (D. Haw. 2005).  Where, as here, no direct evidence of retaliation exists, the court applies the burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See Dirden v. Dep't of Hous. & Urban Dev., 86 F.3d 112, 114 (8th Cir. 1996) (Title VII analysis).

To establish a prima facie case of retaliation, a plaintiff must show that "(1) he engaged in a protected activity; (2) an adverse employment action was taken against him; and (3) a causal connection exists between the two."  Barker v. Mo. Dep't of Corr., 513 F.3d 831, 835 (8th Cir. 2008) (citation omitted).  At the motion-to-dismiss stage, however, Elkharwily need not plead facts sufficient to establish a prima facie case.  See Ring v. First Interstate Mortg., Inc., 984 F.2d 924, 927 (8th Cir. 1993) ("[T]o measure a plaintiff's complaint against a particular formulation of the prima facie case at the pleading stage is inappropriate.");  Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 54 (1st Cir. 2013) ("The prima facie standard is an evidentiary standard, not a pleading standard, and there is no need to set forth a detailed evidentiary proffer in a complaint.").

Elkharwily argues that he was terminated by MCHSAL in retaliation for (1) refusing to transfer a patient experiencing

respiratory failure and (2) reporting Grzybowski's refusal to report to MCHSAL as the "on call" physician.  The court addresses each argument.

### 1.   Resisting Transfer

Elkharwily first argues that he was terminated in retaliation for refusing to transfer a patient experiencing respiratory failure.  Specifically, Elkharwily argues that "Grzybowski wanted to transfer the patient ... to the Mayo Clinic," but that such a course of action "was unnecessary and medically not indicated," as the patient was not stabilized.  Second Am. Compl. ¶ 11(W).  In response, MCHSAL argues that Elkharwily's allegation is contrary to his statement to the Minnesota Board of Medical Practice.

On January 3, 2011, Elkharwily reported to the Minnesota Board of Medical Practice that he refused Grzybowski's transfer request "because [he] was taking care of the patient already and she was already stabilized and feeling better."  Civello Decl. Ex. 4, at B-2.  Despite this sworn and notarized statement, Elkharwily claims that the "report to the medical board was inaccurate in th[is] regard."  Pl.'s Mem. Opp'n 20 n.3.  However, when a written instrument "contradicts allegations in the complaint ... the exhibit trumps the allegations."  N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend, 163 F.3d 449, 454 (7th Cir. 1998) (citations omitted).  In other words, the court concludes that the patient was stabilized.  Thus, EMTALA was inapplicable, as once a patient is

13

stabilized, the hospital has satisfied its obligation under the Act.[3]  See 42 U.S.C. § 1395dd(b)(1)(A).  As a result, there was no EMTALA-violative conduct for Elkharwily to oppose, and dismissal of this EMTALA claim is warranted.

### 2.  Reporting Grzybowski

Elkharwily next alleges retaliatory discharge based on his December 8, 2010, report that Grzybowski failed to appear when he was the "on call" physician.  In response, MCHSAL argues that Grzybowski's failure to respond is not a violation of EMTALA. Although this is an issue of first impression in the District of Minnesota, the court disagrees.

Under EMTALA, participating hospitals are required "to maintain a list of physicians who are on call ... after the initial examination to provide treatment necessary to stabilize an individual with an emergency medical condition."  Id. § 1395cc(a)(1)(I)(iii); see 42 C.F.R. § 489.20(r)(2) (same).  In accordance with this on-call obligation, "section 1867(d)(1)(B) of the Act ... provides penalties for physicians who negligently violate a requirement of section 1867 of the Act, including on-call

---

[3] Even if conduct does not violate Title VII, an employee engages in protected activity when he opposes conduct that he has a good-faith and objectively-reasonable belief that it violates Title VII.  See Guimaraes v. SuperValu, Inc., 674 F.3d 962, 977-78 (8th Cir. 2012).  Even if the "good faith" exception were applicable in the EMTALA context, dismissal would still be warranted, as Elkharwily did not have a mistaken belief about the applicability of EMTALA.

physicians who refuse to appear when called." Medicare Program; Clarifying Policies Related to the Responsibilities of Medicare, 68 Fed. Reg. 53222, 53253 (Sept. 9, 2003). Indeed, such a conclusion is buttressed by 42 U.S.C. § 1395dd(d)(1)(c), which immunizes physicians who transfer patients in the absence of an on-call physician, but explains that such a safe harbor "shall not apply to the hospital or to the on-call physician who failed or refused to appear." Because such language would be inoperative if a contrary decision was reached, the court concludes that a physician's failure to respond when "on call" can constitute an EMTALA violation. See Morrison Enters., LLC v. Dravo Corp., 638 F.3d 594, 609 (8th Cir. 2011) ("We avoid interpreting a statute in a manner that renders any section of the statute superfluous or fails to give effect to all of the words used by Congress." (citation and internal quotation marks omitted)).

Here, Elkharwily alleges that on December 7, 2010, he called Grzybowski, requested that he report to MCHSAL and that he did not arrive until the following day. Second Am. Compl. ¶ 11(U)-(W). Elkharwily also alleges that he reported Grzybowski's failure to respond to Underdahl on December 8, 2010, and that he was discharged two days later. Id. ¶ 11(U). As a result, Elkharwily has stated a plausible claim under EMTALA, and dismissal of the claim against MCHSAL is not warranted.

### 3.    Additional Defendants

Elkharwily also alleges an EMTALA violation against the Institutional Defendants. Elkharwily, however, alleges no facts to support a violation of EMTALA by the Institutional Defendants. Therefore, these defendants are dismissed as to the EMTALA claim.

### C.   Minnesota Whistleblower Act

Elkharwily next alleges a claim against MCHSAL and Mayo Clinic for a violation of the MWA. The court analyzes MWA claims under the burden-shifting framework of McDonnell Douglas. See Chial v. Sprint/United Mgmt. Co., 569 F.3d 850, 854 (8th Cir. 2009) (applying Minnesota law). To establish a prima facie case, a plaintiff must "demonstrate statutorily protected conduct by the employee, an adverse employment action by the employer, and a causal connection between the two." Gee v. Minn. State Colls. & Univs., 700 N.W.2d 548, 555 (Minn. Ct. App. 2005) (citation omitted). A whistleblower engages in protected conduct when he, "in good faith, reports a violation or suspected violation of any federal or state law ... to an employer." Minn. Stat. § 181.932, subdiv. 1(1). For the reasons already stated, Elkharwily engaged in protected conduct when he reported suspected FCA and EMTALA violations. Therefore, Elkharwily has stated a claim under the MWA, and dismissal of MCHSAL is not warranted.[4]

---

[4] Because Elkharwily did not state a claim against Mayo Clinic under the FCA or EMTALA, the MWA claim is dismissed as to this
(continued...)

D.    **Minnesota Vulnerable Adults Act**

Elkharwily   next   alleges   a   violation   of   the   MVAA.
Specifically,   Elkharwily   claims   that   he   was   terminated   in
retaliation   for   lodging   a   complaint   under   the   MVAA.   The   MVAA
states   that   "[a]   mandated   reporter   who   has   reason   to   believe   that
a   vulnerable   adult   is   being   or   has   been   maltreated   ...   shall
immediately   report   the   information   to   the   common   entry   point."
Minn.   Stat.   §   626.557,   subdiv.   3(a).   Alternatively,   "[i]f   a
facility   has   an   internal   reporting   procedure,   a   mandated   reporter
may   meet   the   reporting   requirements   of   this   section   by   reporting
internally."   Id.   subdiv.   4a(a).   The   MVAA   further   provides   that
"[a]   facility   or   person   shall   not   retaliate   against   any   person   who
reports   in   good   faith   suspected   maltreatment   pursuant   to   this
section   ...   because   of   the   report."   Id.   subdiv.   17(a).

Elkharwily,   however,   does   not   allege   that   he   reported   any
alleged   maltreatment   to   a   common   entry   point   or   that   MCHSAL   has   a
reporting   protocol   and   that   he   reported   internally.   See   Cannon   v.
Habilitative   Servs.,   Inc.,   544   N.W.2d   790,   794   (Minn.   Ct.   App.
1996)   (denying   retaliatory   discharge   claim   because   there   was   "no
evidence   indicating   that   any   of   [plaintiff's]   acts   was   a   report
within   the   meaning   of   the   Vulnerable   Adults   Act").   Therefore,   the
MVAA   claim   fails,   and   dismissal   is   warranted.

---

    [4](...continued)
defendant.

### E.   Breach of Contract

In Minnesota, a breach of contract claim has three elements: "(1) the formation of a contract, (2) the performance of conditions precedent by the plaintiff, and (3) the breach of the contract by the defendant." Zinter v. Univ. of Minn., 799 N.W.2d 243, 245 (Minn. Ct. App. 2011) (citation and internal quotation marks omitted).   Elkharwily alleges breach of contract based on (1) MCHSAL's policy providing protection against retaliatory discharge and (2) unpaid work shifts.   The court addresses each argument.

### 1.   Retaliatory Discharge

Elkharwily first argues breach of contract based on his discharge for reporting various violations of state and federal law.   Elkharwily's employment agreement, however, contains no provision protecting against retaliatory discharge. See Civello Decl. Ex. 1.   In response, Elkharwily contends that the "Mayo Integrity and Compliance Program" guarantees that an employee "who honestly and in good faith reports suspected wrongdoing, will be protected from retaliation." Wylie Decl. Ex. A, at 3.[5]   Under certain circumstances, an employee handbook can establish a unilateral contract, but "[a]n employer's general statements of

_____

[5] The second amended complaint cites the Mayo Integrity and Compliance Program and, as a result, it is necessarily embraced by the complaint. See Nat'l Broom Co. of Cal., 2012 WL 4856295, at *1 n.1.

policy are no more than that and do not meet the contractual requirements for an offer." Pine River State Bank v. Mettille, 333 N.W.2d 622, 626 (Minn. 1983). The Integrity and Compliance Policy is no more than a general statement of policy and does not constitute a valid offer. As a result, the claim for breach of contract based on retaliatory discharge fails.

### 2.   Unpaid Shifts

Elkharwily next alleges that he was not paid for work performed in excess of that required by his employment agreement. Specifically, Elkharwily claims that he was to be "reimbursed at the rate of One Hundred One Dollars ($101.00) per hour" for any time he worked in excess of that contemplated by his employment agreement. See Civello Decl. Ex. 1, at Ex. A. Accepted as true, such an allegation states a breach-of-contract claim. Therefore, dismissal of this claim is not warranted.

### F.   Intentional Infliction of Emotional Distress

Elkharwily next alleges IIED. Under Minnesota law, IIED requires that "(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe." Hubbard v. United Press Int'l, Inc., 330 N.W.2d 428, 438-39 (Minn. 1983) (citation omitted). Conduct is considered extreme or outrageous only when it is "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community."

Id. at 439 (citation and internal quotation marks omitted).  In the employment context, Minnesota courts hold "that employment discipline consisting of verbal and written criticism of an employee's job performance, the employer requesting the employee's resignation, and the employer's statement that the employee 'chicken[ed] out' of an assignment [does] not constitute extreme or outrageous behavior."  Langeslag v. KYMN Inc., 664 N.W.2d 860, 868 (Minn. 2003) (first alteration in original) (citation omitted).

Here, Elkharily bases his IIED claim on allegations that defendants threatened to discharge him if he did not resign, made false accusations about his job performance, evicted him from employer-provided housing, claimed that he engaged in sexually-inappropriate behavior with female staff and acted in a generally improper fashion during the termination investigation.  See Second Am. Compl. ¶ 87.  Even if true, however, such allegations do not rise to the level of extreme or outrageous conduct.[6]  See Doan v. Medtronic, Inc., 560 N.W.2d 100, 106 (Minn. Ct. App. 1997) (finding that similar conduct - namely, falsely accusing plaintiff of poor

_____

[6] Elkharwily argues that the court should take into account his bipolar disorder when considering whether the alleged conduct was extreme or outrageous.  Whether conduct is extreme and outrageous is gauged, however, from the perspective of a reasonable person.  See Elstrom v. Indep. Sch. Dist. No. 270, Hopkins, Minn., 533 N.W.2d 51, 57 (Minn. Ct. App. 1995) ("If a reasonable person could be expected to endure the distress, the law does not intervene." (citation omitted)).  Nevertheless, even if the court were to consider Elkharwily's mental impairment, he has not pleaded extreme and outrageous conduct.

job performance and providing a false termination notice - was not
extreme and outrageous).   Therefore, Elkharwily has not alleged
extreme and outrageous conduct, and dismissal of the IIED claim is
warranted.

    **G.   Defamation**

    Elkharwily next alleges a claim for defamation.  Specifically,
Elkharwily claims that defendants made numerous false statements
regarding his job performance at the initial termination meeting,
at his review hearing and to prospective employers.  See Second Am.
Compl. ¶¶ 26, 40-43, 47.  For defamation, a plaintiff must show
that "the defendant made a false and defamatory statement about the
plaintiff ... in unprivileged publication to a third party ... that
harmed the plaintiff's reputation in the community." Pope v. ESA
Servs., Inc., 406 F.3d 1001, 1011 (8th Cir. 2005) (citation and
internal quotation marks omitted), abrogated on other grounds by
Torgerson v. City of Rochester, 643 F.3d 1031 (8th Cir. 2011).
Statements made in reference to one's "business, trade or
profession are actionable per se, without proof of actual damages."
Bedo v. Delander, 632 N.W.2d 732, 739 (Minn. Ct. App. 2001)
(citation omitted).

    Defendants claim that even if false, all statements are
protected by qualified privilege.  A statement is protected by
qualified privilege if it was "made in good faith and ... upon a
proper occasion, from a proper motive, and ... upon reasonable or

21

probable cause." Bol v. Cole, 561 N.W.2d 143, 149 (Minn. 1997) (citation and internal quotation marks omitted). This protection includes communications made among agents of the employer during the investigation of employee misconduct and to prospective employers. See Hunt v. Univ. of Minn., 465 N.W.2d 88, 92 (Minn. Ct. App. 1991) (employment reference); McBride v. Sears, Roebuck & Co., 235 N.W.2d 371, 374 (Minn. 1975) (internal communication).

Here, the alleged defamatory statements occurred after Elkharwily was placed on administrative leave and either during an investigation into conduct that precipitated his discharge or upon the request of prospective employers. As a result, qualified immunity attaches.

Elkharwily responds, however, that the allegedly defamatory statements were made with actual malice. See Lewis v. Equitable Life Assurance Soc'y of U.S., 389 N.W.2d 876, 890 (Minn. 1986) ("A qualified privilege is abused and therefore lost if the plaintiff demonstrates that the defendant acted with actual malice." (citation omitted)). In support, Elkharwily states that "Grzybowski was angry at Plaintiff." Second Am. Compl. ¶¶ 93-94. To show actual malice, however, Elkharwily must show that the statements were "made ... from ill will and improper motives, or causelessly and wantonly for the purpose of injuring the plaintiff." Bahr v. Boise Cascade Corp., 766 N.W.2d 910, 920 (Minn. 2009) (alteration in original) (citation and internal

22

quotation marks omitted). Elkharwily fails to plead such facts. Therefore, dismissal of the defamation claim is warranted.

### H.   Punitive Damages

Finally, Elkharwily alleges a claim for federal punitive damages. The court need not address this argument, however, as punitive damages are not an independent cause of action and are more properly considered a remedy that is "available in some instances but not others." Dearman v. Dial Corp., No. 4:08-CV-825, 2010 WL 254928, at *3 (E.D. Mo. Jan. 19, 2010) (citations and internal quotation marks omitted). Should this matter proceed to trial, and if Elkharwily prevails on the merits, the court will address the issue of punitive damages.


### CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1.    Plaintiff's motion to amend [ECF No. 34] is granted in part, consistent with this order; and

2.    Defendants' motion to dismiss [ECF No. 9] is granted in part, consistent with this order:

a.    The False Claims Act, Emergency Medical Treatment and Active Labor Act and Minnesota Whistleblower Act claims are dismissed as to all defendants, except MCHSAL;

b.    The Minnesota Vulnerable Adults Act claim is dismissed;

       c.   The breach of contract claim is dismissed in part;
and

       d.   The intentional infliction of emotional distress and
defamation claims are dismissed.


Dated:  July 2, 2013


                         s/David S. Doty
                         David S. Doty, Judge
                         United States District Court