**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Alaa E. Elkharwily,<br><br>                    Plaintiff,<br><br>v.<br><br>Albert Lea Medical Center – Mayo Health System, Mayo Clinic Health System – Albert Lea, Mark Ciota, John Grzybowski, Dieter Heinz, Robert E. Nesse, Steve Underdahl, Stephen Waldhoff, Mayo Foundation, and Mayo Clinic, Inc.,<br><br>                    Defendants. | Case No. 12-cv-3062 (DSD/SER)<br><br><br>FINDINGS OF FACT AND CONCLUSIONS OF LAW AND REPORT AND RECOMMENDATION AND ORDER |

Alaa E. Elkharwily, pro se.

Charles G. Frohman, Esq., Maslon LLP, Minneapolis, Minnesota, for Defendants.

Joanne L. Martin, Esq., Mayo Clinic, Rochester, Minnesota, for Defendants.

STEVEN E. RAU, United States Magistrate Judge

This above-captioned case comes before the undersigned on Defendants Albert Lea Medical Center – Mayo Health System, Mayo Clinic Health System – Albert Lea, Mark Ciota, John Grzybowski, Dieter Heinz, Robert E. Nesse, Steve Underdahl, Stephen Waldhoff, Mayo Foundation, and Mayo Clinic, Inc.'s (collectively, the "Defendants") Motion to Hold Plaintiff in Contempt ("Third Contempt Motion") [Doc. No. 347] for Plaintiff Alaa E. Elkharwily's ("Elkharwily") failure to purge himself of the contempt finding in an order issued by the Honorable David S. Doty. (Order Dated Apr. 13, 2017, "Contempt Order") [Doc. No. 324]. This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1) and District of Minnesota Local Rule 72.1 for Findings of Fact, Conclusions of Law, and a Report and

Recommendation. (Order Dated May 26, 2017) [Doc. No. 359] (postponing an evidentiary hearing and referring the matter to the undersigned). A hearing was held to determine whether Elkharwily had purged himself of contempt. *See* (Minute Entry Dated July 27, 2017) [Doc. No. 399]; (Tr.) [Doc. No. 404] (transcript of the evidentiary hearing). Based on the Findings of Fact and Conclusions of Law, the Court recommends: that the Defendants be awarded reasonable fees and costs in bringing their Third Contempt Motion; Elkharwily be found to have purged himself of contempt;[1] and should it ever become apparent that Elkharwily or Richard Wylie ("Wylie")—Elkharwily's former attorney[2]—remain in possession of confidential information in violation of the Protective Order [Doc. No. 47]—or that Elkharwily be found in violation of any other Court order in this matter—that a bench warrant be issued for Elkharwily's arrest.

Furthermore, the Court denies Elkharwily's self-styled motion for appointment of counsel made at the evidentiary hearing.[3] *See* (Minute Entry Dated July 27, 2017); (Tr. at 91–

---

[1] But only after the evidentiary hearing and on the basis of additional involvement by this Court. *See* (Text Only Order Dated Aug. 11, 2017) [Doc. No. 418] (resolving a dispute between the parties regarding the manner in which Elkharwily was to remit payment to the Defendants); (Letter Dated Aug. 23, 2017) [Doc. No. 427] (stating Defendants "deposited the check, and the issuing bank has not requested a return").

[2] Elkharwily states that he is representing himself. *See* (Tr. at 91–92). But Wylie has not officially withdrawn as required by the Local Rules and it is unclear from the record when or why Wylie stopped representing Elkharwily. *See* (Text Only Order Dated Nov. 6, 2014) [Doc. No. 178] (stating Wylie's Motion to Withdraw as Attorney of Record [Doc. No. 164] is denied, and it does not appear that Wylie filed a subsequent motion with the Court to withdraw at any point thereafter).

Furthermore, the Court is concerned about the amount of influence Elkharwily seems to assert over Wylie, particularly given the fact that Elkharwily continues to represent to the Court that he is no longer being represented by Wylie. *Compare* (Tr. at 91–92) (stating that he is *pro se* and requesting the appointment of an attorney), *with* (Exs. 6–7, Attached to Pl.'s Br. in Opp'n to Defs. & Their Counsel Mot. to Hold Pl. in Contempt of Court Order Dated Apr. 13, 2017) [Doc. Nos. 412-8, 412-9] (e-mail chains demonstrating Elkhawily's interference with Wylie's ability to comply with this Court's order that Wylie allow Defendants to inspect the documents in Wylie's possession).

[3] "There is no constitutional or statutory right to appointed counsel in civil cases." *Phillips v. Jasper County Jail*, 437 F.3d 791, 794 (8th Cir. 2006). "The relevant criteria for determining whether counsel should be appointed include the factual complexity of the issues, the ability of

92). Lastly, the Court orders the Clerk's Office to seal certain documents submitted by Elkharwily.

## FINDINGS OF FACT[4]

1. The operative pleading, Elkharwily's Second Amended Complaint, was filed on July 9, 2013. (Second Am. Compl.) [Doc. No. 43].

2. Elkharwily alleges various violations under 31 U.S.C. § 3730 (False Claims Act), 42 U.S.C. § 1395dd (Emergency Medical Treamtment and Labor Act), Minnesota Statutes section 181.932 (Minnesota whistleblower statute), Minnesota Statutes section 626.5572, subdivision 21(a)(4) (Minnesota Vulnerable Adult Protections Act), breach of contract, intentional infliction of emotional distress, and defamation. (*Id.* at 21–31). Elkharwily also requested punitive damages on the federal claims. (*Id.* at 31–32).

3. The Honorable Jeffrey J. Keyes issued a Protective Order on July 25, 2017, tracking closely with a stipulation reached by the parties. *Compare* (Protective Order) [Doc. No. 47], *with* (Stipulation for Protective Order) [Doc. No. 45].

---

the indigent person to investigate the facts, the existence of conflicting testimony, the ability of the indigent person to present the claims, and the complexity of the legal arguments." *Id.* None of these factors suggest that appointment of counsel is warranted in this instance. For example, whether Elkharwily has purged himself of contempt is not a complex issue either factually or as a matter law. Furthermore, the volume of filings in this district and before the Eighth Circuit clearly demonstrates that Elkharwily is capable of advocating on his own behalf. At bottom, there is nothing to suggest that "the plaintiff and the court will substantially benefit from the appointment of counsel." *Plummer v. Grimes*, 87 F.3d 1032, 1033 (8th Cir. 1996). Consequently, the Court denies Elkharwily's request for counsel.

[4] The Findings of Fact include only those facts that are relevant to the contempt determination before the Court. For example, during the pendency of the Defendants' Third Contempt Motion, Elkharwily flooded the docket with submissions that are at best tangentially related to the determination before the Court. *See, e.g.*, [Doc. Nos. 415–17, 421] (various filings alleging that the Defendants perpetuated fraud upon the Court); [Doc. Nos. 419–20] (documents filed in support of Elkharwily's allegations that the Defendants owe him $43,000); [Doc. Nos. 386, 413, 428] (various objections to this Court's Text Only Orders). These filings are not referenced or discussed beyond being mention in this footnote because they have no bearing on the Court's decision.

4. In relevant part, the Protective Order was issued as a "qualified protective order" under 45 C.F.R. § 164.512(e)(1)(v), which authorizes—in limited circumstances—the dissemination of protected health information for which an authorization or opportunity to agree or object is not required. (Protective Order ¶ 12).

5. Furthermore, the Protective Order specified that

> All Confidential documents, along with the information contained in the documents, shall be used solely for the purpose of this action, and no person receiving such documents shall, directly or indirectly, use, transfer, disclose, or communicate in any way the documents or their contents to any other person than those specified . . . . Any other use is prohibited.

(*Id.* ¶ 3).

6. With respect to Confidential protected health information the Protective Order stated that "the parties are prohibited (A) from using or disclosing the protected health information for any purpose other than this litigation and (B) such protected information, documents and records shall be returned to the covered entity or destroyed (including all copies made) at the end of this litigation." (*Id.* ¶ 12).

7. The Protective Order also stated "[t]he obligations imposed by this Protective Order shall survive the termination of this action." (*Id.* ¶ 15).

8. Judge Doty granted Defendants' Motion for Summary Judgment [Doc. No. 200] and dismissed the case with prejudice. (Order Dated Feb. 5, 2015) [Doc. No. 242]. A judgment also issued at that time. (J.) [Doc. No. 243].

9. Elkharily filed a notice of appeal to the Eighth Circuit [Doc. No. 245] on April 4, 2015. The Eighth Circuit affirmed Judge Doty's order granting the Motion for Summary Judgment. *See Elkharwily v. Mayo Holding Co.*, 823 F.3d 462 (8th Cir. 2016) (per curiam).

10. On May 20, 2015, Defendants moved the Court to enter an order to show cause why Elkharwily should not be in contempt of court for failing to abide by Judge Keyes's Text Only Order Dated November 18, 2014 [Doc. No. 185], requiring "each party shall pay for the other party's expert witness fess for attendance at that expert's deposition." *See* (Mot. for Order to Show Cause and Mem. in Supp., "First Contempt Mot.") [Doc. No. 268 at 1] (internal quotation marks omitted).

11. Judge Doty granted Defendants' First Contempt Motion. *See* (Order Dated May 22, 2015) [Doc. No. 272]. On June 17, 2015, Elkharwily tendered the ordered payment and the Order to Show Cause was effectively discharged. *See* (Letter Dated June 17, 2015) [Doc. No. 273]; (Text Only Order Dated June 22, 2015) [Doc. No. 275].

12. On March 3, 2017, Defendants filed their Motion to Show Cause why Plaintiff Should Not be Found in Contempt for Violating the Protective Order, and to Compel the Immediate Return of Confidential Documents ("Second Contempt Motion") [Doc. No. 285].

13. Judge Doty found Elkharwily in contempt for violations of the Protective Order. (Contempt Order). As a result, Judge Doty ordered Elkharwily to "return all documents in his possession, custody or control, including those documents that remain in the possession of his former attorney, Rick Wylie, obtained from [the Defendants] that contain confidential medical records and patient information," destroy all electronic copies of the same, and "certify in writing that he has returned and destroyed all such documents." (*Id.* at 4–5). Judge Doty also ordered Elkharwily to pay Defendants' reasonable attorneys' fees incurred in bringing the Second Contempt Motion. (*Id.* at 5).

14. On April 28, 2017, Defendants filed a declaration specifying their fees and costs. (Decl. of Charles G. Froman in Supp. of Defs.' Req. for Fees & Costs) [Doc. No. 338]. Elkharwily objected to these fees as excessive. (Pl.'s Opp'n to Defs.' Decl. & Attorney Costs & Fees) [Doc. No. 341].

15. Judge Doty overruled Elkharwily's objections and ordered him to pay Defendants' "full amount of fees and costs" totaling $19,962.80 "within 30 days of the date of this order." (Order Dated May 3, 2017, "Fee Order") [Doc. No. 344 at 2].

16. Elkharwily then moved for clarification regarding the Court's prohibition of using "patient medical records 'for any purpose'" and whether Elkharwily may use this information to show it to law enforcement. (Pl.'s Req. for Clarification of District Court Order Dated Apr. 13, 2017, "Pl.'s Req. for Clarification") [Doc. No. 345] (quoting Contempt Order).

17. Judge Doty denied Elkharwily's request to present this information to law enforcement. (Order Dated May 12, 2017) [Doc. No. 346].

18. On May 12, 2017, Defendants filed their Third Contempt Motion, alleging that Elkharwily had not returned or destroyed the documents pursuant to Judge Doty's Contempt Order. *See* (Mem. in Supp. of Third Contempt Mot.) [Doc. No. 349]. Among other arguments, Defendants assert that Elkharwily had not yet returned the CD's he claimed were in his possession. (*Id.* at 3); *see also* (Letter, Attached to Pl.'s Req. From Counsel Frohman & Martin, & Judge Schultz to Withdraw False Evidence, Misstatements, & Misrepresentation Made From Each Federal Ct.) [Doc. No. 343-1 at 1] (Elkharwily averring that he was in possession of Defendants' confidential information

6

stored on compact discs ("CD"), would not destroy the CDs, but would return them to Defendants).[5]

19. At the evidentiary hearing before the undersigned, Elkharwily offered under oath the following testimony with respect to whether he still has confidential information in his possession or control: he could not certify that he destroyed all copies of the confidential information because a laptop he had in his possession was stolen; other use of non-confidential information "was within the litigation limit of this case"; that he requested that Wylie return or destroy all copies of the confidential information; and that because he was not sure where to send the confidential information, he returned the electronic information in duplicate to a number of people working for Defendants. (Tr. at 33–34, 39, 40–42). As a result, Elkharwily repeatedly stated that he has "nothing to return or destroy." *See, e.g.*, (*id.* at 44).

20. With respect to the returned electronic information, Defendants provided mailers that Elkharwily used at the hearing before the undersigned. The undersigned inspected the mailers and stated for the record the addresses that Elkharwily used to return the duplicated CDs were all addresses of the Defendants. (*Id.* at 81–82).

21. With respect to paying the ordered attorneys' fees, Elkharwily testified under oath that he had not tendered any payments to the Defendants as required under the Fee Order. (*Id.* at 71).

22. The undersigned also confronted Elkharwily about his admissions during cross-examination that he was recording the proceeding.[6] *See* (*id.* at 59–60, 72–75).

---

[5]    When referencing the Letter, CM/ECF pagination is used.

[6]    Pursuant to the Policy on Use of Electric Devices in U.S. Courthouses in the District of Minnesota (Effective March 13, 2017), which is posted on each floor of the Courthouse and available online at http://www.mnd.uscourts.gov/documents/Electronic_Devices_Policy.pdf, use

23. As requested at the evidentiary hearing, the parties submitted supplemental briefing further addressing whether Elkharwily had purged himself of contempt. (Decl. of Charles G. Frohman, "Frohman Decl.") [Doc. No. 410] (discussing attempts by Defendants to verify whether Wylie and Elkharwily were in possession of confidential information); (Decl. of Maureen Engelstad, "Engelstad Decl.") [Doc. No. 411] (asserting that Doc. Nos. 352, 365, 392, 394–96 filed by Elkharwily contain confidential information);[7] (Pl.'s Br. in Opp'n to Defs. & Their Counsel Mot. to Hold Pl. in Contempt of Court Order Dated April 13, 2017, "Br. in Opp'n of Contempt") [Doc. No. 412]; *see also* (Text Only Order Dated July 28, 2017) [Doc. No. 401] ("For clarity of the docket, both parties may file supplemental briefing as requested by the Court during the evidentiary hearing. In particular, the parties may submit additional evidence with the Court relating to whether Elkharwily has purged himself of the finding of contempt in the Honorable David S. Doty's Contempt Order.").

24. Of particular note, Elkharwily provided this Court with an insurance claim evidencing his assertion that his laptop was stolen. *See* (Ex. 3, Attached to Br. in Opp'n of Contempt) [Doc. No. 412-5]. Furthermore, Elkharwily provided a signed letter from Wylie stating "[Wylie has] complied with the protective order and order dated April 13, 2017, in this case by destroying all documents in [his] possession marked confidential provided by defendants." *See* (Ex. 7, Attached to Br. in Opp'n of Contempt) [Doc. No. 412-7].

---

of electronic devices to photograph, record, broadcast, or otherwise transmit any part of a court proceeding is prohibited.

[7] The information submitted by Elkharwily includes confidential information that should have been filed under seal. *See* (Protective Order ¶ 16). As a result, the Court based on its inspection of these documents, orders the following documents to be sealed: 342, 352, 365, 392, 394, and 396. Furthermore, because this litigation is over and the Protective Order states that the confidential information shall not be used "for any purpose other than this litigation," the Court further orders that these documents cannot be accessed by either party without the express consent of the Court. *See* (*id.* ¶ 12).

8

25. Additional interventions from this Court was required to resolve the issue of remittance of the $19,962.80 owed under the Contempt Order. *See* (Text Only Order Dated Aug. 11, 2017). Payment was received soon thereafter. (Letter Dated Aug. 23, 2017) (stating Defendants "deposited the check, and the issuing bank has not requested a return").

## CONCLUSIONS OF LAW

26. "A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority . . . ." 18 U.S.C. § 401.

27. "[C]ivil contempt sanctions, or those penalties designed to compel future compliance with a court order, are considered to be coercive and avoidable through obedience, and thus may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard." *United Mine Workers v. Bagwell*, 512 U.S. 821, 827 (1994).

28. "The paradigmatic coercive, civil contempt sanction . . . involves confining a contemnor indefinitely until he complies with an affirmative command such as an order 'to pay alimony, or to surrender property ordered to be turned over to a receiver, or to make a conveyance.'" *Id.* at 828 (quoting *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 442 (1911)).

29. "Imprisonment for a fixed term similarly is coercive when the contemnor is given the option of earlier release if he complies." *Id.* (citing *Shillitani v. United States*, 384 U.S. 364, 370 n.6 (1966)).

30. "By contrast, a fixed sentence of imprisonment is punitive and criminal if it is imposed retrospectively for a completed act of disobedience such that the contemnor cannot avoid or abbreviate the confinement through later compliance." *Id.* at 828–29 (internal quotation marks removed) (citation removed).

31. "This dichotomy between coercive and punitive imprisonment has been extended to the fine context. A contempt fine accordingly is considered civil and remedial if it either 'coerce[s] the defendant into compliance with the court's order, [or] . . . compensate[s] the complainant for losses sustained.'" *Id.* (quoting *United States v. Mine Workers*, 330 U.S. 258, 303–04 (1947) (alterations in original)).

32. Judge Doty found Elkharwily in contempt of court and levied a civil penalty compensating Defendants for the loss sustained. *See generally* (Contempt Order).

33. To purge the finding of contempt, Judge Doty required that Elkharwily essentially perform four actions: (1) "return all documents in his possession, custody or control, including those documents that remain in the possession of his former attorney, Rick Wylie, obtained from [the Defendants] that contain confidential medical records and patient information"; (2) destroy all electronic copies of the same; (3) "certify in writing that he has returned and destroyed all such documents"; and (4) "pay [Defendants] reasonable attorney's fees and costs associated with bringing the motion for order to show cause." (Contempt Order at 4–5); *see also* (Fee Order at 2) (ordering Elkharwily to pay Defendants' reasonable attorney's fees and costs of $19,962.80 on or before June 3, 2017).

34. With respect to the first and second actions, Elkharwily is in the unfortunate position of proving a negative; namely proving that he is no longer in possession of Defendants' confidential information (because it was either returned to Defendants or destroyed). In every respect, Elkharwily has only himself to blame regarding his precarious position. For example, the Court notes that Elkharwily made this showing of proof more difficult both by inexplicably printing hard copies of electronic documents and generating

additional electronic copies of the electronic documents. *See, e.g.*, (Engelstad Decl. ¶ 7) ("All MCHSAL document productions in this matter were made electronically; no productions were made in hard copy."); (Tr. at 41) (discussing sending multiple copies of the electronic information to various individuals either work for or on behalf of Defendants). In other words, instead of complying with the Protective Order after the conclusion of this case—by simply returning or destroying the confidential information—he copied the confidential information and in some cases republished it, in violation of the Protective Order. His conduct at the very least creates a strong inference that he may well be in possession of additional confidential information. Nevertheless, the Court must admit that Elkharwily's submissions and testimony before the Court suggests that he no longer has any of the confidential documents in his possession or control. *See, e.g.*, (Tr. at 41) (Elkharwily's testimony that the envelopes containing CDs presented by Defendants at the evidentiary hearing establish that he returned the documents he had in his possession to the Defendants); (Ex. 7, Attached to Br. in Opp'n of Contempt) (Wylie stating "[he has] complied with the protective order and order dated April 13, 2017, in this case by destroying all documents in my possession marked confidential provided by defendants"). This conclusion is further supported by Defendants' inability to demonstrate that Elkharwily has used confidential information in violation of the Protective Order after Defendants received the CDs from Elkharwily. *See generally* (Mem. in Supp. of Third Contempt Mot.); (Frohman Decl.); (Engelstad Decl.).

35. With respect to the third action, the Court appreciates Elkharwily's concern regarding whether he can certify that "he has returned and destroyed all such documents" given evidence showing that a laptop containing some of this information was stolen and is no

longer in his possession and control. *See* (Ex. 3, Attached to Br. in Opp'n of Contempt) (insurance claim from September 8, 2016, listing a personal laptop as one of the items stolen); *see also* (Tr. 33–34, 39) (discussing the theft of Elkharwily's laptop and how that might prevent a certification). As a result, Elkharwily's statement at various times that he is no longer in possession of confidential information is understood to act as his certification under the circumstances. *See, e.g.*, (Tr. 41) (Elkharwily stating under oath that he does not "have anything to destroy").

36. With respect to the fourth action, it appears that Elkharwily has submitted the payment required of him under the Contempt Order. (Letter Dated Aug. 23, 2017) (stating Defendants "deposited the check, and the issuing bank has not requested a return").

37. In light of the above—despite the fact that Elkharwily's duplication of the confidential information was contrary to the Protective Order—it appears that Elkharwily has complied with Judge Doty's requirements regarding the return of the confidential information and obligations under the Fee Order. *See* (Contempt Order at 4–5); (Fee Order). Therefore—despite some amount of uncertainty—this Court concludes that Elkharwily has purged himself of contempt.[8] In other words, Elkharwily's submissions before the Court and Defendants' lack of evidence demonstrating improper use by Elkharwily of confidential information after the confidential information was returned to the Defendants outweighs the uncertainty this Court is faced with on these issues.

---

[8] The Court's uncertainty is further exacerbated by Elkharwily's history of contumacious conduct and other violations of various court orders. *See, e.g.*, (Order Dated May 22, 2015 at 1); (Contempt Order); (Tr. at 9); (Tr. at 59–60, 72–75); (Text Only Order Dated Aug. 11, 2017); (Exs. 6–7, Attached Br. in Opp'n of Contempt) (detailing Elkharwily's obstreperous interference with Defendants' requests to review documents in Wylie's possession and as ordered by this Court at the evidentiary hearing).

12

38. Nevertheless, Defendants are entitled to reasonable attorneys' fees with respect to enforcement of Judge Doty's Fee Order because it is undisputed that Elkharwily had failed to remit payment as required by the Fee Order at the time Defendants brought its Third Contempt Motion. *See* (Fee Order at 4–5); (Tr. at 71) (Elkharwily's testimony under oath that he had yet to pay the assessed amount of $19,962.80 as required by the Fee Order); *see also Kaah Express FS, Inc. v. Osman*, No. 06-cv-3781 (JRT/FLN), 2007 WL 3232519, at *1 (D. Minn. Oct. 31, 2007) (Tunheim, J.) ("A party may recover reasonable expenses, including attorney's fees, incurred in an attempt to enforce compliance with a court order."). And even after Elkharwily was informed of his failure to comply with the Fee Order, additional intervention by this Court was required to effectuate Elkharwily's compliance. *See* (Text Only Order Dated Aug. 11, 2017).

39. As a result, Defendants should submit reasonable attorneys' fees and costs incurred in enforcing Judge Doty's Fee Order to the Court for review. *See Kaah Express FS, Inc.*, 2007 WL 3232519, at *1.

40. Furthermore, to the extent that Elkharwily's contumacious conduct continues, the record suggests that monetary sanctions have been largely unsuccessful in coercing Elkharwily to reform his conduct. *See, e.g.*, (Order Dated May 22, 2015) (finding Elkharwily in contempt for failing to pay deposition sanctions); (Tr. at 71) (Elkharwily's testimony under oath that he had yet to pay the assessed amount of $19,962.80 in violation of the Fee Order).

41. Consequently, any future violations of the protective order (e.g., by remaining in possession of or using the confidential information)—or any other order of the Court—should cause the Court to issue a bench warrant for Elkharwily's arrest to coerce

compliance. *See United Mine Workers*, 512 U.S. at 827–28. Furthermore, should Elkharwily continue to demonstrate a wanton disregard for the orders of the Court, the Court should determine whether initiating a criminal contempt proceeding is warranted. *See id.* at 827–30.

## RECOMMENDATION

Based on the foregoing and all the files, records, and proceedings, herein **IT IS HEREBY RECOMMENDED** that:

1. Plaintiff Alaa E. Elkharwily's ("Elkharwily") contempt pursuant to Judge Doty's Order Dated April 13, 2017 [Doc. No. 324] be **PURGED**;

2. Elkharwily be **ORDERED** to pay Defendants Albert Lea Medical Center – Mayo Health System, Mayo Clinic Health System – Albert Lea, Mark Ciota, M.D., John Grzybowski, M.D., Dieter Heinz, M.D., Robert E. Nesse, M.D., Steve Underdahl, Stephen Waldhoff, Mayo Foundation, and Mayo Clinic, Inc. ("Defendants") reasonable attorneys' fees for the enforcement of Judge Doty's Order Dated May 3, 2017 [Doc. No. 344];

3. Counsel for Defendants be **ORDERED** to submit a request for attorney's fees and costs to the Court for its review fourteen (14) days after an order issues adopting this Report and Recommendation, after which a subsequent order be issued on the fees owed to Defendants; and

4. Any future violation by Elkharwily of the Protective Order [Doc. No. 47]—or any other order of the Court—should cause the Court to issue a bench warrant for Elkharwily's arrest to coerce compliance.

## ORDER

Based on the foregoing and all the files, records, and proceedings, herein **IT IS HEREBY ORDERED** that:

1. Elkharwily's self-styled Motion for Appointment of Counsel raised at the evidentiary hearing is **DENIED**; and

2. Because certain documents that were filed with the Court should have been filed under seal, the Clerk's Office shall seal the following documents: 342, 352, 365, 392, 394, and 396. Furthermore, pursuant to the Protective Order these documents cannot be accessed by either party without the express consent of the Court. *See* (Protective Order ¶ 12) (stating that documents that contain confidential information shall not be used "for any purpose other than this litigation").

Dated: October 18, 2017

                                                      *s/Steven E. Rau*
                                                      STEVEN E. RAU
                                                      United States Magistrate Judge

**Notice**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore, not appealable directly to the Eighth Circuit Court of Appeals.

Under D. Minn. LR 72.2(b)(1) "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).